OPINION
{¶ 1} Appellant, Jonalyn D'Amico ("D'Amico"), appeals a judgment of the Montgomery County Common Pleas Court, Juvenile Division, granting specified visitation rights to her three-year-old child's great-aunt, Appellee, Patricia Hill ("Hill"). Appellant argues that the trial court erred and abused its discretion in determining the best interests of her daughter Madison C; that the trial court failed to give special *Page 2 
weight to her wishes regarding visitation; and that the visitation order was excessive. For the following reasons, we find that the trial court failed to grant special weight to the parent's wishes, and we, therefore, reverse the judgment of the trial court.
 {¶ 2} In May 2003, D'Amico returned to the Dayton area shortly after giving birth to her third child, Madison. D'Amico also brought with her her two older children, Hailey, age 13, and Kayla, age 10. D'Amico had lived outside the State of Ohio for approximately fourteen years; however, she maintained some sporadic contact with her aunt, Patricia Hill, during this period of time.
 {¶ 3} After D'Amico returned to the Dayton area, Hill offered to assist D'Amico with babysitting the three children while D'Amico worked and later attended school. D'Amico initially attempted to pay Hill for her services; however, Hill refused payment. This arrangement continued until August 2005, when it was mutually terminated due to a deteriorating relationship between Hill and D'Amico. D'Amico claims that Hill repeatedly refused to honor D'Amico's requests regarding the rearing of her children, and that Hill became incensed at D'Amico's fourth pregnancy, even asking D'Amico's children to pray for a miscarriage. D'Amico, while conceding that Hill and Madison had bonded during this arrangement, also testified that Madison always came home "wild and crazy'" and that she is much more disciplined in her behavior now. D'Amico also testified that the older children told her that Hill had beaten them with sticks as punishment. Hill claims that the final altercation came about as the result of D'Amico asking Hill for money to have an abortion, which Hill refused.
 {¶ 4} Thereafter, Hill began threatening and harassing D'Amico, demanding that she be allowed to see Madison. On two occasions the police were called, and they *Page 3 
advised Hill to have no further contact with D'Amico. Hill apparently wanted nothing to do with the older children, Hailey and Kayla.
 {¶ 5} On September 29, 2005, Hill filed a complaint to establish visitation with Madison in the Montgomery County Common Pleas Court, Juvenile Division. A guardian-ad-litem was appointed, and the matter proceeded to trial on May 18, 2006 in front of a magistrate. The magistrate, finding that it was in the best interests of the child, recommended the establishment of visitation between Hill and Madison for one weekend per month and ordered that Hill and D'Amico have no contact with one another. D'Amico filed objections to the magistrate's report, which were overruled, and the trial court adopted the order of the magistrate on January 16, 2007.
 {¶ 6} It is from this judgment that D'Amico has filed the instant appeal. The matter is now before this Court for consideration of D'Amico's three assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 7} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT VISITATION WITH PATRICIA HILL WAS IN THE BEST INTEREST OF MADISON AS SAID FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 SECOND ASSIGNMENT OF ERROR {¶ 8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY UNCONSTITUTIONALLY APPLYING OHIO REVISED CODE SECTION 3109.12 AND SECTION 3109.051(D) WHEN IT FAILED TO GIVE ANY SPECIAL WEIGHT TO THE *Page 4 
APPELLANT'S WISHES REGARDING VISITATION."
 THIRD ASSIGNMENT OF ERROR {¶ 9} "THE TRIAL COURT ERRED IN GRANTING AN EXCESSIVE ORDER OF VISITATION TO PATRICIA HILL."
 {¶ 10} R.C. section 3109.12 provides that "[i]f a child is born to an unmarried woman, * * * any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child[,] * * * if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child." The legislature has then determined that in considering the best interest of the child, that a court should apply the factors provided in R.C. section 3109.051(D).
 {¶ 11} The United States Supreme Court, considering the constitutionality of a strikingly similar statute, observed that "the nationwide enactment of nonparental visitation statutes is assuredly due, in some part, to the States' recognition of these changing realities of the American family. Because grandparents and other relatives undertake duties of a parental nature in many households, States have sought to ensure the welfare of the children therein by protecting the relationships those children form with such third parties. * * * The extension of statutory rights in this area to persons other than the child's parents, however, comes with an obvious cost. For example, the States' recognition of an independent third-party interest in a child can place a substantial burden on the traditional parent-child relationship." Troxel v. Granville (2000), 530 U.S. 57, 64,120 S.Ct. 2004, 147 L.Ed.2d 49. *Page 5 
 {¶ 12} The U.S. Supreme Court went on to observe that theFourteenth Amendment to the U.S. Constitution "includes a substantive component that `provides heightened protection against government interference with certain fundamental rights and liberty interests.'" Id. at 65, quoting Washington v. Glucksberg (1997), 521 U.S. 702, 719,117 S.Ct. 2258, 138 L.Ed.2d 772. See, also, Reno v. Flores (1993), 507 U.S. 292,301-02, 113 S.Ct. 1439, 123 L.Ed.2d 1. The fundamental liberty interest involved in Troxel, as well as the case herein, is "the interest of parents in the care, custody, and control of their children, [which] is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." Troxel, 530 U.S. at 65.
 {¶ 13} The Supreme Court of Ohio has, likewise, consistently recognized this fundamental right. See Harrold v. Collier,107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.Ed.2d 1165, at ¶ 40; Zivich v. MentorSoccer Club, Inc. (1998), 82 Ohio St.3d 367, 372, 696 N.Ed.2d 201;State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6, 10, 15 O.O.3d 3,399 N.E.2d 66.
 {¶ 14} The basis for the U.S. Supreme Court's decision affirming the Supreme Court of Washington's decision that the Washington statute was unconstitutional was that the state trial court gave no special weight to the parent's determination of the child's best interest. The U.S. Supreme Court stated that "the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." (Emphasis added.) Troxel, 530 U.S. at 70. While the Supreme Court passed on the primary question presented-whether the Due Process *Page 6 
Clause requires all nonparental visitation statutes to include a showing of harm or potential harm as a condition precedent to granting such visitation-they strongly expressed that "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best elaborated with care." Id. at 73.
 {¶ 15} The Supreme Court of Ohio subsequently considered the constitutionality of this statute within the context of the U.S. Supreme Court's decision in Troxel. In Harrold v. Collier, 107 Ohio St.3d 44,2005-Ohio-5334, 836 N.E.2d 1165, the Ohio Supreme Court, distinguishing the Washington statute from the Ohio statute in question, nevertheless held, in answering the certified question, that "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." Id. At paragraph one of the syllabus.
 {¶ 16} In discussing the language of the applicable Ohio statutes, R.C. 3109.11, 3109.12 and 3109.051, the Supreme Court of Ohio stated that "consideration of the parents' wishes and concerns is mandatory. Moreover, in light of Troxel and our above holding on the certified conflict issue, a trial court must give special weight to that factor in making its visitation determination, thus protecting a parent's due process rights." Id. at ¶ 42.
 {¶ 17} This Court would note here that this "special weight" requirement is the single necessary component of the decision-making process that provides the heightened Constitutional protection necessary to protect against governmental interference with the fundamental liberty interest of parents in the care, custody, and *Page 7 
control of their children.
 {¶ 18} In neither Troxel nor Harrold, however, was the definition of "special weight" addressed. The Seventh District Court of Appeals, inOliver v. Feldner, 149 Ohio App.3d 114, 2002-Ohio-3209, 776 N.E.2d 499, one of the cases certified as a conflict in the Harrold case, however, discussed the concept of "special weight." That court stated that "[e]ven though the Troxel court did not define `special weight,' previous [United States] Supreme Court decisions make it clear that `special weight' is a very strong term signifying extreme deference. See, e.g., Rodrigues v. Hawaii (1984), 469 U.S. 1078, 1080,105 S.Ct. 580, 83 L.Ed.2d 691 (special weight is given to a verdict of acquittal, signifying a conclusive presumption that a second trial would be unfair); Guardians Assn. v. Civ. Sen/. Comm. (1983), 463 U.S. 582, 621,103 S.Ct. 3221, 77 L.Ed.2d 866 (special weight given to long-standing and consistent administrative interpretations of a statute; court must defer to the interpretation even if the court would interpret the statute differently); Comstock v. Group of Institutional Investors
(1948), 335 U.S. 211, 230, 68 S.Ct. 1454, 92 L.Ed. 1911 (findings of a bankruptcy judge are given special weight; reviewing courts should defer to those findings). The `special weight' requirement, as illuminated by these prior Supreme Court cases, means that the deference provided to the parent's wishes will be overcome only by some compelling governmental interest and overwhelmingly clear circumstances supporting that governmental interest." Oliver, 2002-Ohio-3209 at ¶ 59.
 {¶ 19} This Court would also point to another U.S. Supreme Court decision that defines `special weight' in a somewhat analogous application. In Whitley v. Albers (1986), 475 U.S. 312, 106 S.Ct. 1078,89 L.Ed.2d 251, the Court, discussing a prison's *Page 8 
internal security measures, states that these matters are normally left to the discretion of prison administrators, and that these decisions carry "special weight"; that these decisions of the administrators "should be accorded wide-ranging deference." Id. At 321-22. See, also,Bell v. Wolfish 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447. In explaining "special weight," the court stated "it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." Whitley, 475 U.S. at 322. The choice of a "fit" parent in a nonparental visitation context, expressed with sufficient reasoning to support that choice can be no less of a "considered choice" that is entitled to the same deference of that of a prison official exercising his occupational duties.
 {¶ 20} In this case, the magistrate made the following findings: "(1) the child and maternal great-aunt have established a strong bond; (2) the maternal great-aunt has cared for the child since infancy and she is genuinely concerned for the child's welfare; and (3) the Court finds that visitation with the maternal great-aunt is in the best interests of the child[.]" These bare bones findings totally ignore the wishes of the parent, and, therefore, cannot be said to have been considered by the magistrate whatsoever in making her recommendation, which was adopted by the trial court. In ruling on the objections to the magistrate's report, the trial court, while giving lip service to the parent's objection, does not provide any rationale for going beyond the wishes of the parent and simply concludes that visitation time is in the child's best interest. As the U.S. Supreme Court stated in Troxel, the manner in which the standard is applied must be "`elaborated with care.'"Troxel, 530 U.S. at 73 (citation omitted). Therefore, from the findings before us, we cannot determine that the trial court gave the requisite "special weight" to the *Page 9 
wishes of the parent.
 {¶ 21} Furthermore, in considering the testimony, we note that the mother's wishes to deny visitation were based upon reasonably objective reasons. And, there was no evidence that the mother's choice to deny the visitation would result in any physical or emotional harm to the child. Therefore, there is no evidence before the trial court from which it could have made a finding that would support a conclusion that there was any compelling government interest in interfering with the mother's fundamental liberty interest in raising her daughter as she deems appropriate. Therefore, the trial court's decision is contrary to the manifest weight of the evidence.
 {¶ 22} Based upon the foregoing, we find that the trial court erred in granting the request for visitation rights under R.C. 3109.12. The first and second assignments of error are sustained. And, based upon this determination, the third assignment of error has been rendered moot.
 {¶ 23} Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court.
GRADY, J., concurs.