[Cite as *In re H.A.*, 2013-Ohio-5457.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Appellate Case No. 25832 |
| H.A. | : | |
| | : | Trial Court Case No. 2009-11094 |
| | : | |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of December, 2013.

. . . . . . . . . . .

MARSHALL G. LACHMAN, Atty. Reg. #0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
and
ISABEL A. SUAREZ, Atty. Reg. #0015899, 765 Troy Street, Dayton, Ohio 45404
        Attorneys for Appellant, Mother

H. STEVEN HOBBS, Atty. Reg. #0018453, 119 North Commerce Street, Post Office Box 489, Lewisburg, Ohio 45338-0489
        Attorney for Appellee, Maternal Grandmother

ENRIQUE RIVERA-CEREZO, Atty. Reg. #0085053, 765 Troy Street, Dayton, Ohio 45404
        Attorney for Appellee, Father

. . . . . . . . . . . . .

HALL, J.,

{¶ 1} M.A. appeals from the trial court's decision and judgment overruling her objections to a magistrate's decision and awarding maternal grandmother D.R. ("Grandmother") visitation with M.A.'s child.

{¶ 2} M.A. advances three assignments of error. First, she contends the trial court erred in failing to give "special weight" to her desire that Grandmother not have visitation. Second, she challenges the trial court's finding that awarding Grandmother visitation was in the child's best interest. Third, M.A. claims the trial court erred in granting excessive visitation.

{¶ 3} The record reflects that M.A. is Grandmother's daughter. M.A. is a single mother. Grandmother filed an August 2011 motion requesting court-ordered visitation with M.A.'s child. At the time of the motion, the child was almost three years old. The matter proceeded to a March 2012 hearing before a magistrate. Based on the evidence presented, the magistrate granted Grandmother's motion. The trial court later sustained objections, however, and vacated the magistrate's decision, finding that the child's father, C.G. ("Father"), had been denied his right to participate in the hearing. The trial court returned the matter to the magistrate for a "new hearing," which was held on August 14, 2012 and November 19, 2012. Following that hearing, the magistrate again granted Grandmother visitation. M.A. filed objections. In a June 18, 2013 ruling, the trial court overruled M.A.'s objections, adopted the magistrate's decision, and awarded Grandmother visitation one weekend per month from 6:00 p.m. Friday until 8:00 p.m. Saturday. The trial court also awarded Grandmother visitation one week each summer. M.A. has appealed from the trial court's ruling.

{¶ 4} Before addressing M.A.'s arguments, we turn to R.C. 3109.12(A), which, among other things, authorizes a parent of an unmarried woman to seek visitation with a child born to her. This statute "recognizes that the * * * maternal * * * relatives of a child born to an

unmarried mother often play a significant role in the care and upbringing of a child, which can be strained or severed as time progresses * * *." *Nicoson v. Hacker*, 11th Dist. Lake No. 2000-L-213, 2001 WL 1602666, *2 (Dec. 14, 2001). A trial court may grant grandparent visitation under R.C. 3109.12(A) if it finds visitation in the best interest of the child. *See* R.C. 3109.12(B). In making its determination, a trial court must consider all relevant factors, including those set forth in R.C. 3109.051(D). *Id.* A trial court also must "afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12."[1] *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at syllabus.

{¶ 5}     In the present case, the trial court made the requisite best-interest findings and stated that it was giving "special weight" to M.A.'s wishes regarding visitation. The trial court found visitation with Grandmother to be in the child's best interest, despite M.A.'s wishes to the contrary. On appeal, "we review the trial court's decision regarding non-parent visitation and its corresponding analysis of the best-interest factors, including the wishes of a parent, for an abuse of discretion." *In re F.D.*, 2d Dist. Montgomery No. 23358, 2009-Ohio-4788, ¶10.

{¶ 6}     In her first assignment of error, M.A. contends the trial court merely gave "lip service" to her wishes regarding visitation and provided no rationale for going beyond those wishes and granting Grandmother visitation. M.A. also argues that the trial court ignored or dismissed as insignificant her concerns about visitation.

{¶ 7}     Upon review, we conclude that the trial court properly gave M.A.'s wishes the

---

[1] Parenthetically, we note that Grandmother styled her August 5, 2011 motion for visitation as one brought under R.C. 3109.051, which pertains to grandparent visitation in cases involving divorce, dissolution, legal separation, annulment, or child-support proceedings. However, the parties subsequently (and correctly) treated the motion as one brought under R.C. 3109.12(A).

required "special weight." This requirement emanates from *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), which recognized that parents have a fundamental right to make decisions regarding the care, custody, and control of their children and established that a parent's decision regarding non-parent visitation is entitled to "some special weight."

{¶ 8}    The Ohio Supreme Court applied *Troxel*'s "special weight" requirement to Ohio's non-parent visitation statutes in *Harrold*, supra. The requirement does not mean, however, that a parent's wishes regarding non-parent visitation must prevail. As the *Harrold* court recognized, "Ohio's nonparental-visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into consideration the best interest of the child and balance that interest against the parent's desires." *Harrold* at ¶43. "[W]hile *Troxel* states that there is a presumption that fit parents act in the best interest of their children, nothing in *Troxel* indicates that this presumption is irrefutable. The trial court's analysis of the best interests of a child need not end once a parent has articulated his or her wishes." *Id.* at ¶44.   Indeed, "[b]y stating in *Troxel* that a trial court must accord at least some special weight to the parent's wishes, the United States Supreme Court plurality did not declare that factor to be the sole determinant of the child's best interest." *Id.* "[N]othing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest." *Id.*

{¶ 9}    In *In re Madison C*., 2d Dist. Montgomery No. 22029, 2007-Ohio-5983, a case relied on by M.A., this court applied *Troxel* and *Harrold* where a great aunt attempted to obtain visitation with a three-year-old child. In *Madison C*., a magistrate found that the child and the great aunt shared a strong bond, the great aunt had cared for the child since infancy and had a genuine concern for the child's welfare, and visitation with the great aunt was in the child's best

interest. *Id.* at ¶20. This court opined that such "bare bones findings" totally ignored the wishes of the parent. Although the trial court gave "lip service" to the parent's wishes, this court noted the absence of any rationale for contravening those wishes. *Id.* This court then examined the evidence itself and found that the parent's wishes were "based upon reasonably objective reasons." *Id.* at ¶21. Finding no evidence to support the trial court's interference with the mother's fundamental liberty interest in raising her daughter, this court reversed the visitation order in *Madison C*.

{¶ 10} Upon review, we find the present case distinguishable from *Madison C.* with regard to the "special weight" issue. Unlike *Madison C.*, the magistrate and the trial court here did not totally ignore M.A.'s wishes or fail to provide any rationale for contravening them. To the contrary, the magistrate acknowledged and discussed M.A.'s wishes but found them outweighed by other considerations. Specifically, the magistrate made the following findings in its decision, which the trial court adopted:

> In the present case, based on the competent, credible evidence and testimony adduced at trial, the Court finds that the maternal grandmother is a surgical recovery nurse with a secret security clearance who works at Wright Patterson Air Force Base. The evidence is clear that the grandmother had an ongoing and substantial relationship with the child until terminated by the mother and a genuine interest in the child's welfare. It is undisputed that the child and mother resided with the grandmother for several years after the child was born during which time the grandmother cared for the child almost daily, including entire weekends, and provided financial support to the mother including, but not

limited to birthing costs and items such as a stroller and car seat. Even after the mother and child ceased residing with the grandmother, she regularly visited with and had a positive and bonded relationship with the child. Oddly, the grandmother still maintains the other on her health insurance at no cost to the mother in spite of this dispute.

The Court finds that the parties' relationship appears to have inexplicably soured in early 2011. Whatever the situation was, it plainly angered the mother and caused her to terminate the grandmother's contact with the child. The mother has expressed her strong wish that the Court deny the grandmother's petition for visitation with the child. Frankly, this court is still unable to state with any clarity why these parties are having this dispute other than the mother's complaints about what objectively amount to inconsequential childhood experiences with the grandmother and the somewhat obvious attempt by the mother and maternal grandfather to re-litigate the maternal grandparents' divorce through this action.

What is painfully clear to the court is that the mother's desire to terminate the child's relationship with the grandmother *is not properly justified in this case*. [Emphasis sic]. It is not based on any real, meaningful harm or detriment that may have occurred to the child in connection with the child's substantial and long-term relationship with the grandmother, but instead on the soured relationship between the mother and grandmother. In essence, the mother asks this court to punish the grandmother for all of the mother's petty childhood grievances against her, and for her conduct in connection with a 17-year-old divorce proceeding, by denying to

her any court-ordered contact with her grandchild. However, such an action, while perhaps achieving mother's questionable goal, would equally deprive the child of an important and well-established relationship with the grandmother to the child's detriment.

This Court encourages but cannot force the mother and grandmother to reconcile their seemingly insignificant differences. In any event, the Court will not punish the child merely because of those differences. Furthermore, the "special weight" that the Court affords to the mother's wishes that the grandmother's motion be denied is, in this instance, plainly outweighed by the other facts and circumstances considered by the Court in making this determination[,] especially the substantial nature of [the] child's prior, bonded relationship with the grandmother and the fact that the continued unjustified disruption in that relationship would be detrimental to the child's well-being.

(December 13, 2012 Decision at 1-2).

{¶ 11} In overruling M.A.'s objections and adopting the magistrate's decision, the trial court added the following:

The court recognizes the evidence presented suggests the child and [Grandmother] had a positive and bonded relationship with one another until [M.A.] ceased residing in [Grandmother's] home when the relationship between mother and daughter became strained. [M.A.'s] concerns with [Grandmother] stem from lingering resentment derived from her own childhood and her parents' 1996 divorce and are not properly justified. [M.A.] has taken steps to suspend

visitation with [Grandmother] for personal reasons unrelated to the safety and welfare of the child. [M.A.'s] concerns with visitation do not appear to be based on the best interest of the child. The Court, having afforded appropriate weight and consideration to [M.A.'s] wishes, concludes visitation with [Grandmother] is in the child's best interest.

(June 18, 2013 Decision and Judgment at 3).

{¶ 12} While M.A. plainly disagrees with the magistrate's and the trial court's opinion about her wishes regarding visitation, their decisions demonstrate that her wishes were not ignored and that a rationale was provided for contravening them. In short, the magistrate and the trial court appear to have questioned the seriousness, if not the sincerity, of M.A.'s concerns and found them outweighed by other factors. Whether the trial court erred in reaching this conclusion is addressed under M.A.'s second assignment of error. For purposes of the first assignment of error, we conclude that the trial court did give the requisite "special weight" to M.A.'s wishes regarding visitation. Accordingly, the first assignment of error is overruled.

{¶ 13} In her second assignment of error, M.A. challenges the trial court's finding that awarding Grandmother visitation was in her child's best interest. M.A. complains that the trial court misstated and ignored evidence, failed to weigh the statutory best-interest factors properly, ignored the guardian ad litem's recommendation, and discounted her concerns.

{¶ 14} Upon review, we find no abuse of discretion in the trial court's best-interest determination. As set forth above, the record reflects that M.A. is Grandmother's daughter. Grandmother obtained custody of M.A. following a 1993 divorce. (August 14, 2012 Tr. at 63). While M.A. was in high school, she began dating C.G. When Grandmother disapproved of the

relationship, M.A. moved out at age eighteen and went to live with her father. (*Id*. at 64). Not long thereafter, M.A. became pregnant with C.G.'s child. M.A.'s father became angry about the pregnancy, and the situation resulted in M.A. returning to live with Grandmother in February 2008. (*Id*. at 64-65). While providing shelter for M.A., Grandmother paid for prenatal care, placed M.A. on her insurance, paid for M.A.'s food, provided a vehicle for M.A. to drive, and paid for M.A. to attend nursing school. (*Id*. at 65-68). On October 31, 2008, M.A. gave birth to the child, H.A. (*Id*. at 65). Following the child's birth, M.A. continued to reside with Grandmother. (*Id*. at 70). Grandmother supported M.A. and the child financially through her employment as a registered nurse at Wright Patterson Air Force base. (*Id*. at 70-71, 92). Grandmother had daily contact with the child and provided child care when she was not at work. (*Id*. at 71).

{¶ 15} On or about January 1, 2010, M.A. and the child moved out of Grandmother's house and into an apartment. (*Id*. at 71, 113). Despite M.A.'s relocation, Grandmother continued to have daily contact with the child and to provide child care. (*Id.* at 72). Grandmother was concerned because M.A.'s new boyfriend (not the child's father), who had tattoos on his face and nose piercings, lived with M.A. and was performing tattooing out of the apartment. (*Id*. at 72). To help ensure that the child was safe, and at M.A.'s request, Grandmother regularly watched the child. Grandmother had the child on weekends from Friday evening until Monday morning and also would pick up the child after work during the week. (*Id*. at 72-73). Grandmother provided formula and baby food for the child. She also purchased housewares for M.A.'s apartment. (*Id*. at 74). Up until March 2011, Grandmother saw M.A.'s child practically every day. (*Id*. at 115).

{¶ 16} In March 2011, M.A. and Grandmother had a falling out. M.A. testified that the

dispute occurred when they were fighting and Grandmother threw some papers at her and the child. (November 9, 2012 Tr. at 62). At that time, M.A. began denying Grandmother any access to the child. (*Id*. at 8). When questioned about her concerns regarding visitation, M.A. claimed that Grandmother's home lacked food or furnishings. (*Id*. at 10, 14). M.A. also complained about Grandmother being excessively neat, controlling, and compulsive. (*Id*. at 12-20). Some of M.A.'s grievances stemmed from Grandmother's actions when M.A. was a child. (*Id*.). M.A. feared that Grandmother might repeat those behaviors. (*Id*. at 73). M.A. further complained about Grandmother engaging in "harassing" behavior since March 2011, including excessive phone calls, text messages, and showing up unannounced. (*Id*. at 21-22). M.A. also expressed concern that Grandmother might tell her child negative things about the child's father. (*Id*. at 53). In summarizing why she did not want Grandmother to have visitation, M.A. explained:

> * * * I really want my mom, in my opinion, to be healthy and able to have a relationship with [the child]. I want a relationship with her. It's just—I've seen her at a good state, I feel. And I've seen her at her worst. And right now, with everything, the texting and the calling, still, and the—you know, showing up at my house and things like that, that she's now where I've seen her at. And I—I don't want the same things and the same feelings that I had as a kid and have to this day—they still carry with me now—to happen to [the child].

(*Id*. at 32-33).

{¶ 17} In its decision awarding Grandmother visitation, the trial court specifically addressed the statutory best-interest factors and made findings with regard to them. (June 18, 2013 Decision and Judgment at 2-3). On appeal, however, M.A. complains about the trial court

misstating the evidence in its analysis of the best-interest factors. We agree that two misstatements occurred. First, the trial court stated that M.A. "moved out of [Grandmother's] home and ceased contact with [Grandmother] in 2011." As set forth above, while M.A. ceased contact with Grandmother in 2011, she moved out of Grandmother's home on or about January 1, 2010. For purposes of the trial court's best-interest analysis, however, we see little significance in this misstatement. Although M.A. no longer resided with Grandmother after January 1, 2010, Grandmother still saw the child daily and provided frequent overnight care. Therefore, despite M.A.'s relocation, the relationship between Grandmother and the child appears to have changed little from October 2008, when the child was born, until March 2011, when M.A. ceased contact with Grandmother. The second misstatement by the trial court is even less significant. The trial court stated that Grandmother continued to maintain M.A. and the child on Grandmother's health insurance. In reality, Grandmother only maintained M.A. on her insurance.

{¶ 18} In addition to addressing the foregoing misstatements, M.A. challenges the trial court's weighing of the various best-interest factors. She contends the trial court ignored the guardian ad litem's opinion that her wishes regarding visitation should be upheld. She also claims the trial court gave too little weight to her concerns about Grandmother. It is apparent to us, however, that the trial court did not find M.A.'s concerns as significant as did the guardian ad litem. The trial court was not obligated to follow the guardian ad litem's recommendation, and it reasonably could have questioned the significance—possibly even the sincerity—of M.A.'s concerns in light of the fact that M.A. (1) allowed her child to live in Grandmother's home for approximately fifteen months while Grandmother met all of M.A.'s and the child's needs and (2) continued to allow Grandmother to care for the child daily after M.A. moved into an apartment

with a new boyfriend. Under these circumstances, it certainly was not unreasonable for the trial court (and the magistrate) to question M.A.'s grievances against Grandmother. Parenthetically, we note too that M.A. seems to have formed her strong negative opinions about Grandmother between the first and second hearings before the magistrate. During the initial March 9, 2012 hearing on Grandmother's motion for visitation, M.A. testified that she was "okay with" Grandmother having weekly visitation during the year and a full week in the summer. (March 9, 2012 Tr. at 55-56). During a second hearing months later, M.A. did not want Grandmother to have any visitation due to M.A.'s longstanding concerns about Grandmother's behavior. (November 19, 2012 Tr. at 7-8).

{¶ 19}   As noted above, the legislature, through R.C. 3109.12(A), has recognized that the relationship between a grandparent and an unmarried mother may become strained or severed over time. *Nicoson* at *2. The statute's purpose "is to protect the rights of * * * the maternal * * * relatives when a child is born to an unmarried mother, recognizing the difficulties such relationships can endure and undergo during the child's minority." *Id.* at *3. Here the trial court's decision is consistent with the purpose of the statute, and the evidence reasonably supports awarding Grandmother visitation. Having reviewed the record, we see no abuse of discretion. The second assignment of error is overruled.

{¶ 20}   In her third assignment of error, M.A. claims the trial court erred in granting excessive visitation between Grandmother and the child. Even assuming that some visitation was warranted, she challenges the trial court's decision to award Grandmother one weekend a month and one week each summer. M.A.'s only real complaint is that Grandmother's visitation is in addition to the standard parenting time enjoyed by C.G., the

child's father. M.A. argues that the combined visitation/parenting time of Grandmother and C.G. cuts into her own parenting time.

{¶ 21} We find M.A.'s argument to be without merit. We are unpersuaded that Grandmother's visitation is excessive simply because C.G. has his own parenting time. C.G. is entitled to parenting time because he and M.A. are unmarried parents living separately. The statute under which Grandmother obtained visitation also applies when a mother is unmarried. In authorizing the parent of an unmarried mother to obtain visitation, the legislature certainly could have foreseen that the child's father also might have parenting time. In our view, the trial court was not obligated to reduce Grandmother's visitation to something less than it ordered on the grounds that C.G. also had parenting time. Nor can we say that the trial court's visitation order is so excessive on its face as to constitute an abuse of discretion. The third assignment of error is overruled.

{¶ 22} The judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Marshall G. Lachman
Isabel A. Suarez
H. Steven Hobbs
Enrique Rivera-Cerezo
Hon. Nick Kuntz