[Cite as *In re H.A.*, 2014-Ohio-3751.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

IN RE: H.A.

Appellate Case No.     26166

Trial Court Case No.   2009-11094

(Domestic Relations Appeal from
 Juvenile Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of August, 2014.

. . . . . . . . . . .

ISABEL SUAREZ, Atty. Reg. No. 0015899, 765 Troy Street, Dayton, Ohio 45404
        Attorney for Appellant-M.A.

H. STEVEN HOBBS, Atty. Reg. No. 0018453, 119 North Commerce Street, P.O. Box 489, Lewisburg, Ohio 45338
        Attorney for Appellee-D.R.

ENRIQUE RIVERA-CEREZO, Atty. Reg No. 0085053, 765 Troy Street, Dayton, Ohio 45404
        Attorney for Appellee-C.G.

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     In this case, Appellant, M.A., appeals from a judgment overruling her motion to

dismiss a contempt proceeding filed by Appellee, D.R. M.A. contends that the trial court lacked jurisdiction to order visitation post-adoption under R.C. 3107.15, which is a statute pertaining to the effect of adoptions. In addition, M.A. contends that the trial court erred in imposing a civil contempt sanction when it no longer had jurisdiction.

{¶ 2} We conclude that the trial court did not err in denying M.A.'s motion to dismiss the contempt proceedings. Although M.A. permitted herself to be adopted as an adult by her stepmother, this had no effect on the juvenile court proceeding, which involved M.A.'s minor daughter, who had not been adopted. Therefore, R.C. 3107.15, which pertains to adoptions, does not apply to the case. M.A.'s adoption did not terminate D.R.'s right to visitation with the minor child and was irrelevant to the juvenile court proceedings. Because the juvenile court had jurisdiction to consider the motion for contempt, the judgment of the trial court will be affirmed.

Facts and Course of Proceedings

{¶ 3} The case before us presents unusual circumstances and has a long history. Appellant, M.A., is the single mother of a daughter, H.A., who was born in October 2008. At the time, M.A. was living with her mother, D.R. *See In re H.A.*, 2d Dist. Montgomery No. 25832, 2013-Ohio-5457, ¶ 14. After the child's birth, M.A. and H.A. continued to live with D.R., who supported them through her employment as a registered nurse at Wright Patterson Air Force Base. *Id.* In January 2010, M.A. and the child moved into their own apartment, but D.R. continued to see the child and care for her nearly every day, including entire weekends, until March 2011, when M.A. and D.R. had a falling-out. *Id.* at ¶ 10 and 16. After that time, M.A. ceased contact with her mother. *Id.* at ¶ 17.

**{¶ 4}** In August 2011, D.R. filed a motion with the juvenile court, seeking court-ordered visitation with H.A. *Id.* at ¶ 3. Initially, visitation was ordered in March 2012, but the trial court sustained M.A.'s objections, because the biological father, C.G., had been denied his right to participate in a hearing. *Id.* The magistrate then held another hearing and granted D.R. grandparent visitation. The trial court adopted the decision in June 2013, and awarded D.R. visitation on one weekend per month from 6:00 p.m. Friday until 8:00 p.m. Saturday. In addition, the court awarded D.R. one week visitation during each summer. *Id.* We affirmed the decision on appeal on December 13, 2013. *Id.* at ¶ 22.

**{¶ 5}** In the meantime, D.R. filed a motion for contempt in August 2013, based on M.A.'s failure to provide her with one-week visitation in July 2013. D.R. had given M.A. proper notice of the requested visitation.

**{¶ 6}** D.R. dismissed the original motion, based on D.R.'s inability to obtain service on M.A. Subsequently, D.R. filed an amended motion for contempt in October 2013, based on M.A.'s alleged denial of visitation at the following times: June 21, 2013; the week of July 19 to July 26, 2013, August 16, 2013, and September 20, 2013. At a hearing held in November 2013, M.A. admitted to having been in contempt of the court's prior order, and further admitted that she had willfully and intentionally failed to make the child available for attempted visitations. M.A. stated that she would never comply with the court's order and would never provide court-ordered visitation. She also offered no excuse other than reasons that had been previously litigated and found invalid. Accordingly, the trial court found M.A. in contempt, and sentenced her to 30 days in jail and a $250 fine. The court suspended the sentence and fine, on the condition that M.A. immediately begin to comply with the court-ordered visitation. The court further ordered that D.R. should have six weeks of makeup overnight visitation from Tuesday at 6:00 p.m. to

Thursday at 6:00 p.m.

{¶ 7} In January 2014, D.R. filed a motion to impose sentence, based on M.A.'s alleged denial of visitation on all required dates in December and January 2014. Subsequently, in February 2014, M.A. filed a motion to dismiss the contempt motion, for lack of subject matter jurisdiction. The motion was based on the fact that M.A.'s stepmother, B.A., had filed a petition to adopt M.A. as an adult. According to M.A., the adoption was finalized on December 6, 2013, and terminated any relationship between M.A. and D.R.

{¶ 8} The magistrate denied the motion to dismiss in late February 2014, and the trial court overruled M.A.'s objections to the decision on March 18, 2014. In the meantime, the trial court held a hearing on the motion to impose sentence, and ordered M.A. to serve the 30-day jail sentence from April 11 to May 10, 2014. According to the parties, the sentence has been stayed pending appeal.

{¶ 9} M.A. now appeals from the decision denying the motion to dismiss.

II. Did the Trial Court Lack Jurisdiction over the Case?

{¶ 10} M.A.'s First Assignment of Error states that:

The Trial Court Erred by Denying the Appellant's Motion to Dismiss for Lack of Subject Matter Jurisdiction as the Juvenile Court Has No Jurisdiction to Order Visitation Post Adoption Pursuant to Ohio Revised Code 3107.15.

{¶ 11} Under this assignment of error, M.A. contends that the trial court lacked jurisdiction to grant D.R. visitation, because the adoption petition was finalized prior to the Juvenile Court's final entry granting visitation to D.R., the maternal grandparent. According to M.A., adoption terminates a court's jurisdiction to grant post-adoption visitation to former

relatives.

{¶ 12}    Before we address this issue, we should correct a misstatement in M.A.'s  brief, as well as a flaw in the assignment of error.   As was noted, M.A. contends that the adoption was finalized prior to the juvenile court's final entry granting visitation.   This is incorrect.   The trial court's final entry granting visitation was filed in June 2013, and the adoption was not final until December 2013.   As a result, the trial court did not order post-adoption visitation.

{¶ 13}    The proceedings before the trial court were motions in contempt and to impose sentence, based on M.A.'s failure to comply with court orders.   Based on these facts, M.A.'s First Assignment of Error is also improperly phrased.   What M.A. appears to be contending is that the trial court lacked jurisdiction to hear the motions for contempt and to impose sentence.

{¶ 14}    Initially, in contending that the trial court lacked jurisdiction, M.A. relies on R.C. 3107.15(A)(1) and (2), and *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991).

{¶ 15}    R.C. 3107.15(A) deals with the effect of adoptions, and provides that:

A final decree of adoption and an interlocutory order of adoption that has become final as issued by a court of this state, or a decree issued by a jurisdiction outside this state as recognized pursuant to section 3107.18 of the Revised Code, shall have the following effects as to all matters within the jurisdiction or before a court of this state, whether issued before or after May 30, 1996:

(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted

person's biological or other legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the person by name or by some designation not based on a parent and child or blood relationship;

(2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, and whether executed or created before or after May 30, 1996, which do not expressly exclude an adopted person from their operation or effect * * *.

{¶ 16}   In *Ridenour*, the court considered R.C. 3107.15 and its effect in a situation involving grandparent visitation.  In 1998, a juvenile court had granted permanent custody of two children to the Children Services Board, but had reserved visitation rights for the grandparents.  *Ridenour*, 61 Ohio St.3d at 319, 574 N.E.2d 1055.  After the foster parents filed petitions seeking to adopt the children, the probate court denied the petitions.  *Id.* at 319-320.

{¶ 17}   On appeal, the Supreme Court of Ohio first held that the probate court had failed to consider the children's best interests and had abused its discretion by elevating the grandparents' rights over those of the children.  *Id.* at 322.  As a result, the case was reversed and remanded to the probate court.   However, the court then considered whether the probate court could even consider the grandparents' rights on remand.  *Id.* at 323.  In resolving this issue, the court agreed with the foster parents that "Ohio law does not support post-adoption

visitation by grandparents in a stranger adoption." *Id.*

{¶ 18} The court then stated that the juvenile court had abused its discretion by ordering consideration of grandparent rights post-adoption, because this infringed on the probate court's jurisdiction and judicial discretion regarding adoptions. *Id.* at 324. In this regard, the court reasoned that:

> [T]he state has a strong interest in the permanent placement of children. Adding preconditions and parties to an adoption proceeding will serve only to confuse, delay, and in some cases completely abort, the placement process. This will place an additional onus on the already overburdened children services agencies. More importantly, by delaying and deterring adoption, it will deprive children of the stability and security which they need to become productive and well-adjusted members of the adult community. To avoid these problems, the probate court must have the authority to reach a decision based on the best interests of the child at the time in question, a decision which is not constrained by an order issued at a prior time under a different set of circumstances.

*Ridenour*, 61 Ohio St.3d at 324, 574 N.E.2d 1055.

{¶ 19} The Supreme Court of Ohio went on to stress that neither juvenile nor probate courts have the ability to establish post-adoption conditions under the adoption statute codified in R.C. 3107.15. *Id.* at 325. The court also rejected the argument that allowing post-adoption visitation would be consistent with the policy expressed in R.C. 3109.051, which allows grandparents to petition for visitation rights in certain cases. In this regard, the argument of the grandparents was that R.C. 3109.051 "reflects a legislative trend toward allowing the best interests of the child to govern in all visitation cases" and "when continued visitation has been

previously determined to be in the best interests of the child, it would be consistent with legislative intent to allow a trial judge to preserve those visitation rights in ruling on an adoption petition." *Id.* at 326.

**{¶ 20}** The court rejected this argument, however. Specifically, the court stressed that R.C. 3109.051 does not mention adoption, and nothing in the statute (or its predecessor, R.C. 3109.05) suggested that the legislature intended, by its passage, to indirectly liberalize R.C. 3107.15 to permit post-adoption visitation by grandparents. *Id.* at 326-327.

**{¶ 21}** In discussing this point, the Supreme Court of Ohio made a number of observations about the policies underlying the statutes allowing visitation (which it termed "child protection statutes"), and policies underlying the adoption statute. In contending that D.R.'s visitation rights should be terminated by M.A.'s adult adoption, M.A. relies on these comments, where the court stated that:

> The vast difference between the policy concerns underlying the child protection statutes and the policy considerations behind the adoption statutes supports our refusal to interpret R.C. 310[9].05 and its current analogue [R.C. 3109.051] as an indirect amendment of R.C. 310[7].15. In the context of a divorce, it is in the interest of the child to preserve to the greatest extent possible the healthy and beneficial relationships which the child enjoyed prior to the divorce. It is hoped that maintaining established familial relationships will minimize the negative impact of the divorce on the child. By contrast, the adoption statute seeks to transform the child's collection of relationships and, in effect, give the child a new identity. While this goal may not be fully attainable, particularly in the context of children who are not adopted immediately after birth,

it must be pursued. Otherwise, children will become bewildered as adults battle for their time and affection, adoptive parents will not enjoy the same autonomy as natural parents, and potential adoptive parents may be discouraged from adopting for fear that they will have to compete with the child's biological family for the child's love and respect.

*Ridenour*, 61 Ohio St.3d at 327, 574 N.E.2d 1055.

{¶ 22}   In this regard, M.A. argues that she is being given a new identify, with no connection to her biological mother, and, thus, her child should receive this new identity as well and be spared the bewilderment as adults battle for her attention.   We agree that this would be the situation if the child, H.A., had been adopted, but this is not what occurred.   Accordingly, neither *Ridenour* nor R.C. 3107.15(A)(1) and (2) applies to the situation before us.

{¶ 23}   Under R.C. 3107.15(A)(1), an adoption terminates "all legal relationships between the *adopted person* and the adopted person's relatives * * *."   (Emphasis added.)   As the trial court noted, M.A. is the person being adopted, not H.A.   Thus, the legal relationship that has been terminated is the relationship between M.A. and her mother, not the relationship between H.A. and her grandmother.

{¶ 24}   The case in juvenile court does not concern M.A. – it concerns H.A., and M.A.'s adoptive status is irrelevant to that action.   For the same reasons, our prior decision in the case of *In re L.H.*, 183 Ohio App.3d 505, 2009-Ohio-3046, 917 N.E.2d 829 (2d Dist.), also cited by M.A., is inapplicable.   *In re L.H.* involves the adoption of a child – and the ensuing end of non-parent visitation rights connected to that child.   It does not involve adoption of an adult child who is not the subject of the juvenile court action.   *Id.* at ¶ 2 and 26.

{¶ 25}   M.A. also argues that her position is consistent with R.C. 3107.15(A)(2), which

provides that for inheritance purposes, she is to be treated as a legitimate blood descendent of her adoptive parent, i.e., her stepmother. In view of this fact, M.A. argues that her child, H.A., should also take on the new identity of a legitimate blood descendent of the stepmother, and would no longer have any legal or blood relationship to D.R.

{¶ 26} Again, we disagree. M.A.'s interpretation is inconsistent with R.C. 3107.15(A)(3), which states that:

> Notwithstanding division (A)(2) of this section, a person who is eighteen years of age or older at the time the person is adopted, and the adopted person's lineal descendants, are not included as recipients of gifts, devises, bequests, or other transfers of property, including transfers in trust made to a class of persons including, but not limited to, children, grandchildren, heirs, issue, lineal descendants, and next of kin, for purposes of inheritance and applicability of statutes, documents, and instruments, whether executed or created before or after May 30, 1996, unless the document or instrument expressly includes the adopted person by name or expressly states that it includes a person who is eighteen years of age or older at the time the person is adopted.

{¶ 27} Because M.A. was over the age of 18 when she was adopted, this subsection of the statute applies, and militates against the view that the status of an adopted person's lineal descendants is changed by the adoption. When the adopted person is an adult, the adopted person (and his or her descendants) are specifically excluded from inheriting from an adoptive parent of the adult unless the will or other document such as a trust, explicitly states that the adopted person is included. This is an exception to the fact that an adopted child is considered the legitimate blood descendant of the adoptive parent under R.C. 3107.15(A)(2). *See Bank One*

*Trust Co. N.A. v. Reynolds*, 173 Ohio App.3d 1, 2007-Ohio-4197, 877 N.E.2d 342, ¶ 14-33  (2d Dist.) (noting that R.C. 3107.15(A)(3) would bar a son adopted as an adult from inheriting under a trust, because the trust did not  include the adopted son by name.  However, we also held in *Reynolds* that R.C. 3107.15, which was enacted in 2003, could not be applied retroactively to the trust, which was executed in 1959).

**{¶ 28}**    As a final matter, M.A. asks us to reverse the trial court in order to promote the public policy expressed in *Ridenour*.  In this regard, M.A. relies on the portion of *Ridenour* we previously quoted, and argues that she should be allowed to transform her collection of relationships and take on a new identity.  *Ridenour*, 61 Ohio St.3d at 327, 574 N.E.2d 1055. M.A. argues that this will reduce stress for H.A., "as she struggles to cope with understanding her family relationships and the unfavorable disposition of the parties in this case."  Appellant's Brief, p. 18.

**{¶ 29}**    We decline M.A.'s invitation.   We have already noted the reasons why *Ridenour* does not apply.   Furthermore, our prior opinion in the case before us quoted the following remarks of the trial court, as the party most familiar with the situation:

"The Court finds that the parties' relationship appears to have inexplicably soured in early 2011.  Whatever the situation was, it plainly angered the mother and caused her to terminate the grandmother's contact with the child.  The mother has expressed her strong wish that the Court deny the grandmother's petition for visitation with the child.  Frankly, this court is still unable to state with any clarity why these parties are having this dispute other than the mother's complaints about what objectively amount to inconsequential childhood experiences with the grandmother and the somewhat obvious attempt by the mother and maternal

grandfather to re-litigate the maternal grandparents' divorce through this action.

"What is painfully clear to the court is that the mother's desire to terminate the child's relationship with the grandmother *is not properly justified in this case*. [Emphasis sic]. It is not based on any real, meaningful harm or detriment that may have occurred to the child in connection with the child's substantial and long-term relationship with the grandmother, but instead on the soured relationship between the mother and grandmother. In essence, the mother asks this court to punish the grandmother for all of the mother's petty childhood grievances against her, and for her conduct in connection with a 17-year-old divorce proceeding, by denying to her any court-ordered contact with her grandchild. However, such an action, while perhaps achieving mother's questionable goal, would equally deprive the child of an important and well-established relationship with the grandmother to the child's detriment."

*In re H.A.*, 2d Dist. Montgomery No. 25832, 2013-Ohio-5457, ¶ 10, quoting the trial court's December 13, 2012 Decision, pp. 1-2.

**{¶ 30}** In the magistrate's decision overruling the motion to dismiss, which was adopted by the trial court, the following additional observations were made:

This case has a long history with this court. The case has endured many motions, two trials and an appeal all because the mother is inexplicably opposed to [D.R.'s] visitation with the child. Now, the mother, who is an adult, has apparently been adopted by her father's wife in yet another grossly transparent effort to thwart [D.R.'s] visitation and to make an "end-run" around this court's prior orders granting [D.R.] modest visitation with the child.

February 21, 2014 Magistrate's Decision and Judge's Order, p. 1.

**{¶ 31}** In light of the circumstances of this case, depriving the grandmother and child of a relationship would not serve any sound public policy. Accordingly, the trial court did not err in overruling M.A.'s motion to dismiss, and the First Assignment of Error is overruled.

### III. Did the Trial Court Err in Imposing a Contempt Sanction?

**{¶ 32}** M.A.'s Second Assignment of Error states that:

The Trial Court Erred When the Trial Court Imposed a Civil Contempt Sanction When It No Longer Had Jurisdiction.

**{¶ 33}** Under this assignment of error, M.A. contends that the contempt sanction is moot, because the trial court lacked jurisdiction over the case. This assignment of error is contingent on the success of the First Assignment of Error, and, accordingly, is overruled.

### IV. Conclusion

**{¶ 34}** All of M.A.'s assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Isabel Suarez
H. Steven Hobbs

Enrique G. Rivera-Cerezo
Hon. Nick Kuntz