Harrold et al., Appellees, v. Collier, Appellant.

[Cite as *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334.]

(Nos. 2004–1492 and 2004–1647—Submitted June
14, 2005—Decided October 10, 2005.)

Alice Robie Resnick, J.

{¶ 1} Renee Harrold and appellant, Brian S. Collier, shared a relationship that produced a daughter, Brittany Renee Collier (born July 28, 1997). The two never married, and after Brittany's birth, Renee Harrold was designated as Brittany's residential parent. Appellant received supervised visitation with Brittany twice a week.

{¶ 2} From her birth, Brittany resided with her mother at the home of her maternal grandparents, appellees, Gary and Carol Harrold. Renee Harrold was suffering from cancer, and appellees took care of Renee until her death on

October 10, 1999. Following Renee's death, appellees were granted temporary legal custody of Brittany.

{¶ 3} Appellant subsequently filed for legal custody of Brittany, and the Wayne County Juvenile Court designated him as Brittany's residential parent. On July 31, 2002, appellant removed Brittany from appellees' home, where she had lived for the previous five years, and refused to permit any further visitation between Brittany and appellees.

{¶ 4} Appellees filed a motion for grandparent visitation with Brittany. After hearing evidence on the motion, the juvenile court magistrate issued a decision granting appellees' motion for visitation. The magistrate expressly noted appellant's opposition to visitation between Brittany and appellees, but found that appellant's actions had not been in the best interest of Brittany. The magistrate reasoned that Brittany had been in the custody of appellees for three years following her mother's death and found that appellees provided an important link to Brittany's deceased mother. Therefore, the magistrate concluded that grandparent visitation with appellees was in Brittany's best interest. After conducting an independent review of the magistrate's findings and decision, the juvenile court judge issued an order granting appellees visitation with Brittany.

{¶ 5} Appellant objected to the juvenile court's decision granting appellees' motion for visitation. In ruling on the objections, the juvenile court found that Brittany's interest in maintaining her relationship with appellees outweighed appellant's wishes for no visitation. However, the juvenile court held that the United States Supreme Court's decision in *Troxel v. Granville* (2000), 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49, requires courts to find "overwhelmingly clear circumstances" that support forcing visitation for the benefit of the child over the opposition of the parent. Therefore, the juvenile court ruled that, although the statutory factors seemed to support visitation with appellees over the objection of appellant, there was insufficient proof in the record to find overwhelmingly clear circumstances for overruling the wishes of appellant. Consequently, the juvenile court sustained appellant's objections and dismissed appellees' motion for visitation.

{¶ 6} On appeal, the Ninth District Court of Appeals held that the juvenile court erred in its interpretation and application of *Troxel* to the case. *Estate of Harrold v. Collier*, Wayne App. No. 03CA0064, 2004-Ohio-4331, 2004 WL 1837186. The appellate court found that the United States Supreme Court reached a narrow holding in *Troxel*—namely, that the "sweeping overbreadth" of the Washington state nonparental-visitation statute rendered the statute unconstitutional when applied. Id. at ¶ 14 and 18. Because the Ninth District Court of Appeals found that the Washington state statute in *Troxel* was distinguishable from Ohio's nonparental-visitation statutes, the appellate court ruled that *Troxel*

did not invalidate Ohio's nonparental-visitation statutes. Accordingly, the court of appeals reversed the juvenile court's dismissal of appellees' motion for visitation and remanded the cause to the juvenile court for an assessment of the motion for visitation under the applicable Ohio statutes.

{¶ 7} Upon motion by appellant, the court of appeals found its judgment to be in conflict with the judgment of the Seventh District Court of Appeals in *Oliver v. Feldner*, 149 Ohio App.3d 114, 2002-Ohio-3209, 776 N.E.2d 499, on the following issue: "Whether Ohio Courts are obligated to afford 'special weight' to the wishes of the parents of minor children concerning non-parental visitation as outlined in *Troxel v. Granville* (2000), 530 U.S. 57 [120 S.Ct. 2054, 147 L.Ed.2d 49]." The cause is now before this court upon our determination that a conflict exists, as well as our acceptance of a discretionary appeal.

## CERTIFIED CONFLICT ISSUE

{¶ 8} In *Troxel*, the United States Supreme Court reviewed an action arising out of a Washington statute that permitted "[a]ny person" to petition for visitation rights "at any time" and authorized a court to grant such rights whenever the visitation may serve a child's best interest. Id., 530 U.S. at 60, 120 S.Ct. 2054, 147 L.Ed.2d 49, quoting Wash.Rev.Code 26.10.160(3). In the case before the Supreme Court, the Troxels petitioned for visitation with their two granddaughters following the death of their son, the granddaughters' father. The girls' mother objected. The trial court granted visitation to the Troxels, finding that visitation was in the girls' best interests. The Washington Supreme Court held that the Troxels could not obtain visitation with their granddaughters, because the Washington state statute permitting such visitation unconstitutionally infringed on the fundamental right of parents to rear their children. Id. at 67, 120 S.Ct. 2054, 147 L.Ed.2d 49.

{¶ 9} Upon review, the United States Supreme Court found that the state's visitation statute unconstitutionally infringed on the mother's fundamental right to make decisions concerning the care, custody, and control of her daughters. In so holding, the court recognized that "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id. at 66, 120 S.Ct. 2054, 147 L.Ed.2d 49.

{¶ 10} The court found that the Washington trial court placed on the mother, the custodial parent, the burden of disproving that visitation would be in the best interest of her daughters. In so doing, the court ruled, the trial court disregarded the traditional presumption that a fit parent acts in the best interest of his or her child. Id. at 69, 120 S.Ct. 2054, 147 L.Ed.2d 49.

{¶ 11} A plurality of the *Troxel* court went beyond invalidating the statute to discuss the scope of the parental right and its required protections. The plurality stated that the problem was not that the trial court intervened into the private realm of the family, but that when it did, "it gave no special weight at all" to the mother's determination of her daughters' best interests. Id. The plurality stated that if a fit parent's decision regarding nonparental visitation becomes subject to judicial review, "the court must accord *at least some special weight* to the parent's own determination." (Emphasis added.) Id. at 70, 120 S.Ct. 2054, 147 L.Ed.2d 49. However, the plurality explicitly declined to "define * * * the precise scope of the parental due process right in the visitation context." Id. at 73, 120 S.Ct. 2054, 147 L.Ed.2d 49.

{¶ 12} Therefore, adopting the plurality view in *Troxel,* we answer the certified-conflict issue in the affirmative. Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12.

## OHIO'S NONPARENTAL–VISITATION STATUTES

{¶ 13} In his discretionary appeal, appellant argues that Ohio's nonparental-visitation statutes, R.C. 3109.11 and 3109.12, unconstitutionally infringe on a parent's fundamental right to make decisions concerning the care, custody, and control of his or her child. We disagree.

{¶ 14} R.C. 3109.11 states:

{¶ 15} "If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code."

{¶ 16} R.C. 3109.12 provides:

{¶ 17} "(A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgement has become final pursuant to section 2151.232, 3111.25, or

3111.821 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.

{¶ 18} "(B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code."

{¶ 19} The factors in R.C. 3109.051(D) are:

{¶ 20} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

{¶ 21} "(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

{¶ 22} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

{¶ 23} "(4) The age of the child;

{¶ 24} "(5) The child's adjustment to home, school, and community;

{¶ 25} "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

{¶ 26} "(7) The health and safety of the child;

{¶ 27} "(8) The amount of time that will be available for the child to spend with siblings;

{¶ 28} "(9) The mental and physical health of all parties;

{¶ 29} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

{¶ 30} "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

{¶ 31} "(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or neglected child;

{¶ 32} "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶ 33} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

{¶ 34} "(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

{¶ 35} "(16) Any other factor in the best interest of the child."

{¶ 36} We begin our analysis with the principle that statutes carry a strong presumption of constitutionality. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 560, 664 N.E.2d 926; *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 418–419, 633 N.E.2d 504. The party challenging the statutes bears the burden of proving that the legislation is unconstitutional beyond a reasonable doubt. *Thompkins* at 560, 664 N.E.2d 926; *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38–39, 616 N.E.2d 163.

{¶ 37} A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph four of the syllabus. A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid. Id.

{¶ 38} Further, where statutes are challenged on the ground that they are unconstitutional as applied to a particular set of facts, the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts. *Belden,* 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, at paragraph six of the syllabus.

{¶ 39} If the challenged legislation impinges upon a fundamental constitutional right, courts must review the statutes under the strict-scrutiny standard. *Sorrell,* 69 Ohio St.3d at 423, 633 N.E.2d 504. Under the strict-scrutiny standard, a statute that infringes on a fundamental right is unconstitutional unless the statute is narrowly tailored to promote a compelling governmental interest. Id.; see, also, *Chavez v. Martinez* (2003), 538 U.S. 760, 775, 123 S.Ct. 1994, 155 L.Ed.2d 984.

{¶ 40} The United States Supreme Court stated in *Troxel* that "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Id., 530 U.S. at 66, 120 S.Ct. 2054, 147 L.Ed.2d 49. Likewise, this court has recognized that parents have a fundamental liberty interest in the care, custody, and management of their children. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 372, 696 N.E.2d 201. Therefore, we must examine Ohio's nonparental-visitation statutes under the strict-scrutiny standard.

{¶ 41} Appellant claims that Ohio's nonparental-visitation statutes are sufficiently broad to be analogous to the Washington state visitation statute at issue in

*Troxel.* However, contrary to appellant's assertion, the Ohio statutes are more narrowly drawn and capable of a more narrow construction than the Washington statute in *Troxel.* Unlike the Washington statute that allowed "[a]ny person" to petition the court for visitation rights at "any time," the Ohio nonparental-visitation statutes limit the parties who can petition the court for visitation and limit the application of the statutes to cases where there is a specified predicate event or condition. R.C. 3109.11 applies only in cases where the mother or father of the child is deceased and limits the persons who can petition for nonparental visitation to the parents and relatives of the deceased mother or father. Likewise, R.C. 3109.12 applies only when a child is born to an unmarried woman and limits the persons who can petition for nonparental visitation to the parents and relatives of the unmarried mother and to the father and his parents or relatives, if the father has legally acknowledged paternity or a court has declared him to be the father.

{¶ 42} Further, unlike the Washington statute at issue in *Troxel,* which contained no reference to the parents' wishes as a factor to be weighed, R.C. 3109.11 and 3109.12 expressly identify the parents' wishes and concerns regarding visitation as a factor the court must consider in making its determination, by incorporating R.C. 3109.051(D). Although the trial court can consider any factor it considers relevant, consideration of the parents' wishes and concerns is mandatory. Moreover, in light of *Troxel* and our above holding on the certified-conflict issue, a trial court must give special weight to that factor in making its visitation determination, thus protecting a parent's due process rights.

{¶ 43} Nothing in R.C. 3109.11, 3109.12, or 3109.051(D) prevents the trial court from giving special weight to the parent's wishes and concerns regarding visitation. In fact, special weight is required by R.C. 3109.051(D)(15), since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its "best interest of the child" evaluation. This requirement is not minimized simply because Ohio has chosen to enumerate 15 other factors that must be considered by the trial court in determining a child's best interest in the visitation context. Ohio's nonparental-visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into to consideration the best interest of the child and balance that interest against the parent's desires.

{¶ 44} Further, while *Troxel* states that there is a presumption that fit parents act in the best interest of their children, nothing in *Troxel* indicates that this presumption is irrefutable. The trial court's analysis of the best interests of a child need not end once a parent has articulated his or her wishes. By stating in *Troxel* that a trial court must accord at least some special weight to the parent's

wishes, the United States Supreme Court plurality did not declare that factor to be the sole determinant of the child's best interest. Moreover, nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest. The state has a compelling interest in protecting a child's best interest, *In re T.R.* (1990), 52 Ohio St.3d 6, 18, 556 N.E.2d 439, and Ohio's nonparental-visitation statutes are narrowly tailored to serve that compelling interest. They are not, therefore, unconstitutional under *Troxel*.

{¶ 45} In this case, the trial court properly placed on appellees the burden of proving that visitation would be in the best interest of Brittany, thereby honoring the traditional presumption that a fit parent acts in the best interest of his or her child. Further, the trial court expressly weighed appellant's opposition to visitation between Brittany and appellees as a factor in its decision, thus protecting appellant's due-process rights. The court ultimately decided that Brittany's best interests in maintaining her relationship with appellees outweighed appellant's desire for no visitation. While the trial court did not use the words "special weight," it is clear that the court gave due deference to appellant's wishes and concerns regarding visitation before determining that it was in Brittany's best interest to grant appellees' motion for grandparent visitation.

{¶ 46} Unfortunately, the trial court misinterpreted *Troxel* as requiring courts to find "overwhelmingly clear circumstances" to support forcing visitation for the benefit of the child over the opposition of the parent. *Troxel* did not articulate such a standard. Rather, the plurality of the court expressly declined to define "the precise scope of the parental due process right in the visitation context." Id., 530 U.S. at 73, 120 S.Ct. 2054, 147 L.Ed.2d 49.

{¶ 47} Accordingly, we find that Ohio's nonparental-visitation statutes—R.C. 3109.11, 3109.12, and 3109.051(D)—are constitutional as applied to the parties in this case. Further, since there exists a set of circumstances under which the statutes are valid, R.C. 3109.11, 3109.12, and 3109.051(D) are constitutional on their face. See *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. We, therefore, affirm the judgment of the court of appeals.

{¶ 48} There is no reason to remand the cause to the trial court for yet another assessment of appellees' motion for grandparent visitation under the Ohio statutes. The facts of this case clearly warrant granting grandparent visitation to appellees, especially considering that they raised Brittany for the first five years of her life. The trial court evaluated the statutory factors and protected appellant's due-process rights by giving special weight to appellant's objections to the visitation before determining that granting grandparent visitation was warranted under the Revised Code. Therefore, we remand the matter to the trial

court solely for the purpose of establishing a schedule to facilitate visitation between Brittany and appellees under the applicable Ohio statutes.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———————

Holland & Muirden, Gregory L. Hail, and Jason R. Roach, for appellant.

Jackwood Law Office, Rosanne K. Shriner, and Renee J. Jackwood, for appellees.

Karen A. Wyle, urging reversal for amicus curiae Coalition for the Restoration of Parental Rights.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Elise W. Porter, Assistant Solicitor, Kent M. Shimeall, Assistant Attorney General, and Rebecca L. Thomas, Assistant Solicitor, for amicus curiae Ohio Attorney General.