[Cite as *In re T.N.M.W.*, 2018-Ohio-4141.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| T.N.M.W. | : | Appellate Case No. 2018-CA-5 |
| | : | |
| | : | Trial Court Case No. 21330119 |
| | : | |
| | : | (Juvenile Appeal from |
| | : |  Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of October, 2018.

. . . . . . . . . .

JENNIFER S. DELAPLANE, Atty. Reg. No. 0089521, 127 W. Market Street, Troy, Ohio
45373
        Attorney for Plaintiff-Appellee

JEREMY M. TOMB, Atty. Reg. No. 0079664, 124 W. Main Street, Troy, Ohio 45373
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Mother appeals from a juvenile court order granting the appellee, paternal grandmother, visitation with her granddaughter. Finding no error, we affirm.

## I. Background

{¶ 2} The minor child in this case was born in December 2009. At that time, the child's mother and father were living together and were not married. For a couple of months, Grandmother would live with the family for a couple of weeks at a time to help care for the child. When the child was around four months old, Father assaulted Mother in the home while Grandmother was present and holding the child. The parents separated then, and Grandmother had less contact with her granddaughter. The parents reunited until the child was about a year old, when there was another domestic-violence incident. After that, the parents split for good, and Mother ended Grandmother's relationship with her granddaughter. When the child was around four years old, Father requested parenting time. The court awarded him parenting time supervised by Grandmother. During these visits, Grandmother sought to establish a relationship with her granddaughter and a relationship between her granddaughter and grandmother's family.

{¶ 3} Only a handful of these visits occurred before the court suspended Father's parenting time. In July 2015, Father was arrested on theft charges, and Grandmother was charged with unlawful entrustment of a motor vehicle. Apparently, Grandmother had let Father and his girlfriend use her car knowing that neither was licensed. Father had driven to Walmart and stolen several items. Both Grandmother and Father were convicted, and Father went to prison.

{¶ 4} In December 2016, Grandmother filed a motion asking for visitation with her

granddaughter. Mother filed a motion to dismiss, which the trial court overruled. The court appointed a guardian ad litem (GAL) to investigate the situation. In February 2018, a hearing was held. Father was in prison at the time and did not attend. Grandmother, Mother, and the GAL testified, and the GAL submitted a report. Grandmother testified that for a while she had reached out to Mother and asked to visit her granddaughter. Mother rebuffed these overtures. Grandmother said that her goal was to establish a relationship between the child and her family and to have the child participate in family events. Grandmother admitted that her son, Father, had a serious drug problem, and she admitted that she had, at times, enabled him. But she denied that he was ever under the influence during his supervised visits with the child.

{¶ 5} Mother testified at the hearing that she was married and lived with her husband and three children. She admitted that Grandmother helped with the infant child. Mother said that she was troubled that Grandmother did not come to her aid during her son's assault, but Mother acknowledged that Grandmother was holding the child. Mother also admitted that Grandmother continued to help care for the child and visit until Father's downward spiral eight months later. Mother said that she had lost trust in Grandmother because of the domestic-violence incident and her enabling of Father. She acknowledged that Grandmother had tried to contact her for visitation, but Mother still did not trust Grandmother and did not like some members of her extended family.

{¶ 6} The GAL testified in favor of limited visitation. He said that he had investigated Mother's concerns and had concluded that the concerns should not prevent visitation. The GAL said that Father had serious drug problems, that he had relapsed, and that Grandmother had enabled her son in the past. But the GAL found that

Grandmother had taken steps to understand her son's drug problems and how to respond to those problems. The GAL believed that the child would be safe with Grandmother.

{¶ 7} In March 2018, the trial court granted Grandmother two, four-hour visits each month.

{¶ 8} Mother appealed.

## II. Analysis

{¶ 9} Mother assigns three errors to the trial court. In the first, Mother contends that the court erred by denying her motion to dismiss. She contends in the second that the court failed to give the proper weight to her wish that Grandmother have no visitation. In the third assignment of error, Mother contends that the trial court's decision to grant visitation was against the weight of the evidence and an abuse of the court's discretion.

## A. Motion to dismiss

{¶ 10} The first assignment of error alleges:

The Trial Court erred and abused its discretion when it failed to grant Defendant/Appellant's Motion to Dismiss.

{¶ 11} Mother argues that the trial court should have granted her motion to dismiss because there was no reason to interfere with her right to raise her child as she sees fit.

{¶ 12} The U.S. Supreme Court recognized in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. According to Ohio's Seventh Appellate District, *Troxel* teaches that, for a nonparental visitation order to be valid, there must be "compelling and narrowly tailored reasons for a court to be hearing the visitation case at all," that is, there must be "a constitutionally valid reason for haling

the parents into court." *Oliver v. Feldner*, 149 Ohio App.3d 114, 2002-Ohio-3209, 776 N.E.2d 499, ¶ 56 (7th Dist.). Mother contends that here there was no compelling and narrowly tailored reason for the State to infringe on her parental rights. She quotes the Sixth District as saying that "[i]t is only when parents are involved in a disruptive event that the state has authority to infringe upon the parental autonomy liberty interest." *In re K.M.-B.*, 2015-Ohio-4626, 48 N.E.3d 998, ¶ 34. Mother argues that there was no disruptive event here.

{¶ 13} In this case, no disruptive event was needed. Under Ohio law, "[g]randparents may be granted visitation rights upon their motion in certain circumstances, when such rights are found to be in the best interest of the grandchild." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, 868 N.E.2d 261, ¶ 9. Two circumstances, found in R.C. 3109.11 and 3109.051(B), grant visitation rights to grandparents upon the occurrence of a "disruptive precipitating event," such as "parental death [R.C. 3109.11] or divorce [now codified as R.C. 3109.051(B)]." *In re Gibson*, 61 Ohio St.3d 168, 169, 573 N.E.2d 1074 (1991), *citing In re Whitaker*, 36 Ohio St.3d 213, 215, 522 N.E.2d 563 (1988). But "[i]n one departure from the 'disruptive precipitating event' principle, R.C. 3109.12 has been added to allow grandparental visitation in the case of 'a child * * * born to an unmarried woman.' " *Id.* at 170. Ohio's nonparental visitation statutes have been found to be constitutional under *Troxel*. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 44. Accordingly, no "disruptive precipitating event" is necessary to grant reasonable companionship or visitation to a grandparent or relative of a child born to unmarried parents who remain unmarried.[1]

---

[1] The 5th District has held that R.C. 3109.12 is unconstitutional where "the parents of

{¶ 14} Mother also argues that this is not a case where, because the child was born out of wedlock, the relative assumed parental-like duties or developed a relationship with the child. Mother again quotes the Sixth District: "While the grandmother had participated in the life of the grandchild since his birth, there was no evidence the grandmother was more involved in the child's life because of the circumstances of his birth." *In re K.M.-B.* at ¶ 39. Mother says that Grandmother never assumed parental-like duties and says that Grandmother has no relationship with the child.

{¶ 15} Grandmother correctly points out that there is no requirement that the relative seeking visitation either assumed parental-like duties or established a bond with the child. Moreover, *In re K.M.-B.* is not analogous to this case. In that case, the unwed mother was living with the father of the child at the time of the child's birth, and shortly thereafter they were married. The intervening relative was the maternal grandmother. Based on those facts, the appellate court concluded that "the purposes behind the statute are not achieved by application of the statute." *Id.* The court noted that "[t]here was no absent father which caused a need for preservation of the paternal family. Furthermore, because the intervening relative is the maternal grandmother, there was no in-law issue." *Id.* The same is not true in the present case.

{¶ 16} Grandmother asserted a valid legal basis on which the trial court could grant

---

the child indeed marry each other during the pendency of the relative's visitation complaint," because there is "no rational basis for differentiating married parents who were unmarried at the time of the complaint's filing from those who were married at that time." *Rugola-Dye v. Dye*, 5th Dist. Delaware No. 08 CAF 06 0038, 2009-Ohio-2471, ¶ 22. Under this authority, if the parents marry after a child is born, they are treated the same as a couple that was married when the child was born, and a precipitating event -- parental death (R.C. 3109.11) or a domestic relations or child support proceeding (now codified as R.C. 3109.051(B)) -- is statutorily required before grandparents or relatives have a right to visitation.

her visitation, so the court did not err by overruling Mother's motion to dismiss Grandmother's motion.

{¶ 17} The first assignment of error is overruled.

**B. Weight afforded Mother's wish**

{¶ 18} The second assignment of error alleges:

The Trial Court erred and abused its discretion when it failed to give sufficient, constitutionally required, weight to [Mother's] wishes.

{¶ 19} Mother contends that the trial court failed to give proper deference to her wish that her daughter not have visitation with Grandmother.

{¶ 20} In determining whether to grant visitation, a court must not only consider the wishes of the child's parents but also must accord the wishes special weight. The U.S. Supreme Court "established that a parent's decision regarding nonparent visitation is entitled to 'some special weight.' " *In re F.D.*, 2d Dist. Montgomery No. 23358, 2009-Ohio-4788, ¶ 6 quoting *Troxel*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d. 49. Applying *Troxel* to Ohio's nonparent visitation statutes, the Ohio Supreme Court has held that "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." *Harrold*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, paragraph one of the syllabus. And we have said that "[u]nder *Troxel* and *Harrold*, 'a trial court must give special weight to [this] factor in making its visitation determination, thus protecting a parent's due process rights.' " *In re F.D.* at ¶ 8, quoting *Harrold* at 51. We emphasized, however, that "[t]his does not mean that a parent's wishes regarding nonparent visitation necessarily will prevail." *Id.* We explained:

As the *Harrold* court recognized, "Ohio's nonparental visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into consideration the best interest of the child and balance that interest against the parent's desires." * * * "[W]hile *Troxel* states that there is a presumption that fit parents act in the best interest of their children, nothing in *Troxel* indicates that this presumption is irrefutable. The trial court's analysis of the best interests of a child need not end once a parent has articulated his or her wishes. By stating in *Troxel* that a trial court must accord at least some special weight to the parent's wishes, the United States Supreme Court plurality did not declare that factor to be the sole determinant of the child's best interest. Moreover, nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest."

*Id.*, quoting *Harrold* at 51-52.

{¶ 21} The trial court here gave the required weight to Mother's wish regarding visitation. In its written decision, the court acknowledged and discussed her wish that no visitation be had. The court expressly stated that it had considered "the special weight afforded to mother," but the court did not follow Mother's wish. The court appears to have doubted the legitimacy of Mother's concerns and found them outweighed by the child's interest in having a relationship with Grandmother.

{¶ 22} While Mother disagrees with the court's view of her wishes, the court's decision plainly shows that it gave her wishes the proper weight. In the next assignment of error, we review whether the trial court erred by going against her wishes. For purposes

of this assignment of error, we conclude that the trial court gave the requisite "special weight" to Mother's wishes regarding visitation.

{¶ 23} The second assignment of error is overruled.

### C. The decision to grant visitation

{¶ 24} The third assignment of error alleges:

The manifest weight of the evidence did not support the Trial Court's Decision that an award of grandparent visitation is in the children's best interest.

{¶ 25} The proper standard of review to apply to a juvenile court's nonparent-visitation decision is abuse of discretion. *See In re F.D.*, 2d Dist. Montgomery No. 23358, 2009-Ohio-4788, at ¶ 10 ("We review the trial court's decision regarding nonparent visitation and its corresponding analysis of the best-interest factors, including the wishes of a parent, for an abuse of discretion."); *In re L.A.*, 2d Dist. Champaign No. 2013-CA-33, 2013-Ohio-5757, ¶ 37 (quoting the same). "Such deference is necessary because oftentimes the crucial evidence lies in the demeanor and attitude of the parties, which cannot be transcribed into the record." *In re K.M.-B.*, 2015-Ohio-4626, 48 N.E.3d 998, at ¶ 45, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Here, Mother does not challenge any of the trial court's best-interest findings per se but rather challenges the use of and weight given to those findings. In her reply brief, Mother argues that the trial court abused its discretion by granting Grandmother visitation. Accordingly, we review Mother's challenges for abuse of the trial court's discretion.

{¶ 26} R.C. 3109.12(B) provides that, in determining whether to grant a grandparent visitation, a court must consider all relevant factors, including those listed in

R.C. 3109.051(D). Sixteen factors are listed there, but only about half of them were relevant to the trial court's decision here:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

* * *

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

* * *

(7) The health and safety of the child;

* * *

(9) The mental and physical health of all parties;

* * *

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D).

{¶ 27} The trial court noted that Mother admitted that Grandmother had an early relationship with the child that lasted until the child was about a year old. A continuing relationship was prevented by Mother, mainly because of Grandmother's relationship with Father. The court found that the child was a healthy eight-year-old and was well-adjusted

to her home, school, and community. The court said that no evidence was presented that the child's health or safety would be endangered by visits with Grandmother. The court noted that Mother said that the visits might affect the child's health, but the court dismissed this concern saying that Mother presented no supporting evidence.

{¶ 28} The court acknowledged that Mother wanted no visitation because she did not trust Grandmother. This mistrust was based on events involving Father, principally Grandmother's failure to intervene when Father assaulted her. Mother also cited Grandmother's refusal to acknowledge Father's drug problem and her enabling of him. The court noted that Grandmother had acknowledged the domestic-violence incident and that she had admitted to enabling her son at times. But the court pointed out that Grandmother had denied that she ever supervised visits with the child when her son was under the influence of drugs. The court also noted that the GAL had concluded that Mother's concerns were not legitimate. The GAL believed that Grandmother had sufficiently addressed, or was continuing to address, Mother's concerns. The GAL acknowledged Father's serious drug and abuse problems, his relapse, Grandmother's conviction for wrongful entrustment, and Grandmother's past enabling of him. But the GAL said that Grandmother had sought help to understand her son's drug problem and how to respond appropriately. And the GAL did not believe that the child would be in any danger when with Grandmother. He found that Grandmother's home was appropriate and that the child would be able to integrate into her family.

{¶ 29} The trial court considered Mother's refusal to allow visitation as a factor in its decision and accorded her wish the special weight it deserved. But in the end, the court determined that her wish was outweighed by the child's interest in maintaining a

relationship with her grandmother.

**{¶ 30}** We think that the trial court here reasonably determined that some visitation with Grandmother was in the child's best interest. "[T]he legislature, through R.C. 3109.12(A), has recognized that the relationship between a grandparent and an unmarried mother may become strained or severed over time. The statute's purpose 'is to protect the rights of * * * the maternal * * * relatives when a child is born to an unmarried mother, recognizing the difficulties such relationships can endure and undergo during the child's minority.' " (Citation omitted.) *In re H.A.*, 2d Dist. Montgomery No. 25832, 2013-Ohio-5457, ¶ 19, quoting *Nicoson v. Hacker,* 11th Dist. Lake No. 2000-L-213, 2001 WL 1602666, *3 (Dec. 14, 2001). Based on our review of the record, we conclude that the evidence supports the court's decision to allow visitation, and that the decision was not an abuse of the court's discretion.

**{¶ 31}** The third assignment of error is overruled.

### III. Conclusion

**{¶ 32}** We have overruled the three assignments of error presented. The trial court's order is affirmed.

. . . . . . . . . . . . .


FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Jennifer S. Delaplane
Jeremy M. Tomb
Hon. W. McGregor Dixon, Jr.